## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| MELISSA J. TILLMAN, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7: 13-CV-113 (HL) |
| CAROLYN W. COLVIN, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

### RECOMMENDATION

Plaintiff herein filed this Social Security appeal on August 13, 2013, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

### LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits her ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits on August 10, 2009. (Tr. 49, 197-203, 225). Her claims were denied initially and upon reconsideration. (Tr. 104-115). A video hearing was held before an Administrative Law

Judge ("ALJ") who presided from Macon, Georgia on February 9, 2012.   (Tr. 68-103). Thereafter, in a hearing decision dated February 24, 2012, the ALJ determined that Plaintiff was not disabled.   (Tr. 49-62).    The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.   (Tr. 10-15).

*Statement of Facts and Evidence*

Plaintiff was forty-five (45) years of age at the time of the hearing before the ALJ, and alleged disability since February 1, 2008, due to bipolar disorder, severe social anxiety, and schizophrenia. (Tr. 73, 197, 230).   Plaintiff completed the eighth grade, and has past relevant work experience as a mail carrier and cashier. (Tr. 60, 73).

As determined by the ALJ, Plaintiff suffers from "the following severe impairments: a mental disorder variously diagnosed as: bipolar disorder, schizoaffective disorder, post-traumatic stress disorder, generalized anxiety disorder, social anxiety disorder, and panic disorder; and asthma[.]"   (Tr. 52).   The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and she remained capable of performing

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid concentrated exposure o (sic) fumes, odors, dust, and other pulmonary irritants. The claimant can understand, remember, and follow simple instructions and sustain attention, persistence, and pace for simple tasks; no more than incidental public contact; can interact with co-workers and supervisors in low demand social settings; may need occasionally help setting goals; needs stable work setting; no jobs requiring travel to unfamiliar places or the use of public transportation.

(Tr. 52, 54).   Although Plaintiff could not return to her past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other

jobs that existed in significant numbers in the national economy, and thus was not disabled. (Tr. 60-62).

## DISCUSSION

Plaintiff alleges that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician, and failed to properly evaluate Plaintiff's complaints of pain.  (Docs. 9, 11).

*Physician and Other Source Opinions*

Plaintiff alleges that the ALJ failed to give proper weight to Dr. Fan, Plaintiff's treating psychiatrist, when determining Plaintiff's residual functional capacity.  Plaintiff also maintains that the ALJ did not properly consider the opinions of Mr. Garmon, a physician's assistant, and Ms. Lunney, a licensed professional counselor.

The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect her ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  The Commissioner's regulations also state that

more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.  "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Id.*

The ALJ afforded "very little weight to the opinions of Dr. Fan" because Dr. Fan did not have a significant treating relationship with Plaintiff, there were no clinical or diagnostic techniques used to support his opinions, and his opinions were not consistent with the record as a whole.  (Tr. 57).

Dr. Fan, a doctor at Georgia Pines, submitted a Mental Capacity and Limitations Assessment dated November 24, 2010, wherein he noted that he was Plaintiff's examining physician.  (Tr. 514).  Dr. Fan stated that Plaintiff had been diagnosed with schizoaffective disorder, with secondary diagnoses of post-traumatic stress disorder, generalized anxiety disorder, and social anxiety disorder.  (Tr. 514).  Plaintiff's Global Assessment of Function (GAF) score was 55.  (Tr. 514).  Dr. Fan opined that Plaintiff had the following symptoms which would likely be unacceptable in a competitive employment workplace: hallucinations, withdrawal or isolation, and memory impairment.  (Tr. 514).  Additionally, Dr. Fan opined that Plaintiff had the following marked symptoms that would interfere with her capacity to function: anhedonia (inability to experience pleasure), sleep disturbance, difficulty concentrating, and severe anxiety.  (Tr. 514).  Plaintiff would likely have difficulty interacting with co-workers, supervision, and the general public.  (Tr. 514).  Dr. Fan stated that Plaintiff would likely not function at the competitive level

in complex or simple tasks, and would likely miss more than 3 days of work per month as a result of her mental status. (Tr. 514). He also noted that Plaintiff's medications cause her drowsiness. (Tr. 514).

The ALJ found that Dr. Fan did not have a significant treating relationship with Plaintiff. (Tr. 57). Dr. Fan only saw Plaintiff on three occasions prior to the date he completed the Assessment. (Tr. 473, 475-76, 481). Further, in the Assessment, Dr. Fan refers to himself as an examining physician, rather than a primary care physician. (Tr. 514). There is substantial evidence to support the ALJ's decision to give Dr. Fan's opinions very little weight, in part, due to the lack of significant treatment provided by Dr. Fan. *See Rylee v. Astrue*, 2010 WL 3039602, *7 (S.D. Ala., Aug. 4, 2010) (finding a physician who saw the plaintiff only three times over a year and a half, including only one physical examination, was not a treating physician); *Gainous v. Astrue*, 402 Fed. Appx. 472, 474, n. 2 (11th Cir. 2010) (noting that the court "has refused to give greater weight to the opinion of a physician who only examined the plaintiff once"); *Sanabria v. Commissioner of Soc. Sec.*, 303 Fed.Appx. 834, 838 (11th Cir. 2008) (one factor relied on by the ALJ when determining what weight to give a treating physician is "the length of the treatment relationship and the frequency of examination").

Additionally, Dr. Fan did not provide clinical or laboratory diagnostic support for his opinions. A "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Dr. Fan provided no medical evidence to support his opinion of Plaintiff's limitations (*see* Tr. 514), and thus his opinion was properly discounted by the ALJ.

The mental health treatment notes also do not support Dr. Fan's opinions. Plaintiff was

reported to be cooperative and pleasant during her mental health appointments; there is no indication she would have difficulty interacting with co-workers, supervisors, or the general public. (Tr. 497-98, 500, 505, 508-10, 569-70, 573, 575, 577). The treatment notes do not indicate memory impairments. (Tr. 492-93, 495-98, 500, 505, 507-10, 569-70, 573, 575). Further, there is no indication that Plaintiff suffered from withdrawn or isolated symptoms that would be unacceptable in the workplace, and Halidol had helped Plaintiff's auditory hallucinations. (Tr. 569). Plaintiff only reported sedation with her medication on a few occasions (Tr. 495, 496), and normally denied sedation as a medication side effect. (*See* Tr. 492, 497, 498, 500). Accordingly, there is substantial evidence to support the ALJ's decision that the record as a whole, including Dr. Fan's treatment notes, does not support Dr. Fan's opinions.

The ALJ determined that Dr. Fan's opinions were entitled to very little weight because Dr. Fan did not have a significant treating relationship with Plaintiff, Dr. Fan did not state the clinical or diagnostic techniques used to support his opinions, and Dr. Fan's opinion of Plaintiff's limitations was not consistent with the record as a whole. As the ALJ clearly articulated her reasoning for not relying on Dr. Fan's opinions and as her decision is supported by substantial evidence, the ALJ did not err when she afforded very little weight to Dr. Fan's opinions.

Plaintiff also contends that the ALJ erred in giving little weight to the opinions of Mr. Garmon, a physician's assistant, and Ms. Lunney, a licensed professional counselor. (Doc. 9). Both Mr. Garmon and Ms. Lunney submitted Psychiatric/Psychological Impairment Questionnaires. (Tr. 543-50, 552-59). The ALJ gave little weight to the opinions of Mr. Garmon and Ms. Lunney to the extent that the opinions reflected total disability. (Tr. 58). The ALJ found that Mr. Garmon's and Ms. Lunney's opinions were based on Plaintiff's self-reports, and could not be objectively verified. (Tr. 58).

An opinion from a treating source, such as a nurse practitioner, is not entitled to the same weight as a treating physician. Social Security Ruling 06-3p establishes that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-3p. "Acceptable medical sources" are defined in the regulations as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). Physicians' assistants and licensed professional counselors are defined as "other sources". 20 C.F.R. § 416.913(d)(1); 20 C.F.R. § 404.1513(d); *Jordan v. Astrue*, 2012 WL 6779419, *8 (M.D. Ala. Dec. 11, 2012) (licensed professional counselors). "[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2nd Cir. 2008). Thus, the ALJ is not required to give significant weight to the opinions of Mr. Garmon or Ms. Lunney, who are both defined as "other sources".

Further, Mr. Garmon and Ms. Lunney did not provide any objective medical evidence to support their opinions, such as clinical or diagnostic techniques. (Tr. 543-50, 552-59); *see Edwards*, 937 F.2d at 584. Mr. Garmon provided no explanation for his opinions. (Tr. 543-50). Ms. Lunney appears to have treated Plaintiff on one occasion prior to the Questionnaire, and her opinions appear to be based solely on Plaintiff's self-reports and Ms. Lunney's observations. (Tr. 552-59). Accordingly, the ALJ did not err when she gave little weight to the opinions of Mr. Garmon and Ms. Lunney.

*Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when she discredited Plaintiff because Plaintiff only had mental status abnormalities when she was seen by her mental health practitioners, her GAF scores

8

ranged from 50-65, and her mental conditions were only treated with medication. (Doc. 9). If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then she must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence. 20 C.F.R. § 404.1529(c). The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information. SSR 96-7p.

After discussing Plaintiff's testimony and subjective complaints, the ALJ determined that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible.

(Tr. 58).

The ALJ found Plaintiff to be less than credible for several reasons. The ALJ determined Plaintiff lacked credibility because Plaintiff's subjective complaints were out of proportion with the objective medical findings. (Tr. 58-59). Additionally, Plaintiff lacked credibility due to her lack of medical treatment. (Tr. 59). Plaintiff was routinely reported to have stable mental statuses, limited to no side effects from her medications, and was typically only being treated every

9

two to three months.   (*See* Tr. 470-76, 480, 492-93, 495-98, 500, 505, 507-10, 564-65, 569-70, 573, 575).   In December of 2009, Plaintiff reported that she was not currently seeking medical attention, due to no insurance.   (Tr. 361).

The ALJ also determined that Plaintiff lacked credibility because her reports of very limited daily living activities were outweighed by the other evidence in the record.   (Tr. 59-60).   At a psychological examination, Plaintiff reported that during her longest employment period (8 years as a store manager) she got along well with her coworkers and supervisors.   (Tr. 362).   Plaintiff "is able to perform household chores, such as light cleaning, laundry and washing dishes.   She is able to prepare meals and to use the oven and the microwave.   She reports she enjoys cooking. [Plaintiff] reports she thinks she would be able to manage finances and pay bills."   (Tr. 362).

Additionally, the ALJ found Plaintiff lacked credibility due to the circumstances surrounding the filing date of Plaintiff's application for benefits.   (Tr. 60).   Plaintiff was released from prison in July of 2009, and filed for benefits in August of 2009.   (Tr. 197-203, 361).   It is unclear if Plaintiff's unemployment is a result of disabling impairments or for some other reason, such as her incarceration.

The ALJ applied the correct legal standard, in that, she relied on the record as a whole to determine that Plaintiff's testimony was not credible.   The ALJ adequately considered Plaintiff's subjective accounts of symptoms and physical limitations, and did so pursuant to the governing rulings and regulations.   The ALJ also provided adequate and specific reasons for discrediting Plaintiff's subjective accounts, relying on the objective medical evidence, Plaintiff's lack of treatment, Plaintiff's daily activities, and several inconsistencies between Plaintiff's testimony and the record.   As there is substantial evidence to support the ALJ's credibility determination, the ALJ did not commit reversible error.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 6th day of August, 2014.

                                             s/ ***THOMAS Q. LANGSTAFF***
                                             **UNITED STATES MAGISTRATE JUDGE**

llf